## Steele, et al. v. Crawford, Executor.

(Decided February 20, 1923.)

### Appeal from Breathitt Circuit Court.

1. Bastards—Promise of Support—Consideration.—A mere oral promise by the father to provide for his bastard child out of his estate is without consideration and unenforcible, and a fortiori a similar promise, in consideration of future illicit intercourse is contrary to public policy and void.

2. Contracts—Legality—Public Policy—Compounding Offenses.—A contract by the father to provide for his bastard child out of his estate, based on the agreement of the mother not to prosecute him for seduction, has for its purpose the compounding of a felony and is therefore void.

3. Pleading—Petition Devising Trust—Sufficiency.—A petition which alleged that the testator devised his property to his brother with the understanding that he was, in case of a sudden or violent death, to distribute his estate among his heirs and take care of his two daughters, but did not allege that the testator died a sudden or violent death, was demurrable in that it did not aver the happening of the contingency on which the trust was to take effect.

W. N. COPE for appellants.

GRANNIS BACH for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Carrie Steele and Effie Collins are the bastard children of Breck Crawford who died in the year 1918, leaving a will by which he devised all of his property to his brother, A. C. Crawford, who qualified as his executor. Three years later the two children sued their father's executor to recover the sum of $10,000.00 each. A demurrer was sustained to the petition as amended, and the petition was dismissed. Plaintiffs appeal.

The grounds for which a recovery is sought may be summarized as follows:

(1) In the year 1887 Breck Crawford seduced Mollie Gabbard under the promise of marriage, and, as a result thereof, Carrie Steele was born in the year 1888. The decedent recognized Carrie Steele as his child and promised her mother he would take care of her as long as he lived and provide for her out of his estate, and also made the same promise to Carrie Steele. Pursuant to said promise, decedent did take care of her until his death.

(2) After the birth of Carrie Steele her mother, Mollie Gabbard, by reason of the promise of decedent to take care of and provide for her and her child, became a slave to his wishes and lived with him as though she were his lawful wife. The decedent told Mollie Gabbard that if she had any more children by him, he would take care of them as long as he lived and would provide for them out of his estate. In the year 1890 Effie Collins was born, and the decedent publicly recognized her as his child. From that time on decedent provided for both Carrie Steele and Effie Collins until the time of his death, and during his last illness told their mother that he would take care of them out of his estate. (3) At the time of his death the decedent was a single man and was worth at least $70,000.00. On the — day of ——, 1912, he executed a will, by the terms of which he bequeathed all of his property to his brother, A. C. Crawford. At the time he had other brothers and sisters, and he had just been elected to the office of sheriff of Breathitt county, which position was full of danger to human life. At the time the will was executed, "the said Breck Crawford had an understanding with his brother, A. C. Crawford, the defendant herein, that he was, in case of a sudden or violent death, to distribute his estate among his heirs and to take care of his two daughters, the plaintiffs herein, and that the said A. C. Crawford agreed with the said Breck Crawford, deceased, to carry out his wishes and that the said A. C. Crawford, the defendant herein, has failed to do so under the terms of the agreement and understanding that the deceased had with him prior to the execution of said will in regard to these plaintiffs; that the deceased, Breck Crawford, charged and directed the said A. C. Crawford, defendant, to take care of these plaintiffs out of his estate, which the said A. C. Crawford as executor of the estate has failed and refused to do."

It is alleged in the amended petition that after the birth of both of the children, Breck Crawford agreed with their mother that, if she would not indict and prosecute him for seduction under promise of marriage, he would take care of the children as long as he lived, and provide for them out of his estate, and that, because of said agreement, their mother failed and refused to indict him, and the contract was never broken by either of them.

We have ruled that a father's promise to provide for his bastard child is valid if supported by a sufficient consideration. The rule was applied in Doty's Admr. v.

Doty's Guardian, 80 S. W. 803, 118 Ky. 204, where it was held that the mother's agreement not to take the child away, but to permit him to live in the house with the father, was sufficient to support the father's agreement to educate the child and to give him certain land and money. In Clark v. McFarland's Exor., 5 Dana 45, a contract by which the putative father agreed to support the mother and child and pay the child $10,000.00 if the mother would not institute bastardy proceedings against him was upheld. On the other hand, it is equally well settled that a mere promise by the father to provide for his bastard child out of his estate is without consideration and cannot be enforced, Mercer v. Mercer's Admr., 87 Ky. 30, and *a fortiori* a similar promise, in consideration of future illicit intercourse, is contrary to public policy, and therefore void.

But it is insisted that the mother's agreement not to prosecute the decedent on the charge of seduction was sufficient to support his promise of support. It must not be overlooked that the purpose of the agreement was to compound a felony, and no principle of law is better settled than that an agreement not to prosecute is void, not only because it is against public policy, but because the agreement itself is a crime. 13 C. J. 451; Swan v. Chandler, 8 B. Mon. 97; American National Bank v. Madison, 144 Ky. 152, 137 S. W. 1076.

The only other ground on which a recovery is sought is that the property was devised in trust, it being alleged that at the time the will was executed the testator had an understanding with his brother, A. C. Crawford, that he was, in case of a sudden or violent death, to distribute his estate among his heirs and take care of his two daughters, and that A. C. Crawford agreed to carry out the testator's wishes, but refused to do so. Aside from the vague and indefinite character of the trust, it appears from the language of the petition that the trust was to become effective only in case of the testator's sudden or violent death. As the petition did not allege that the testator died a sudden or violent death, it is apparent, even if it be conceded that the averments are otherwise sufficient to show an enforcible trust, that the petition is demurrable on the ground that it fails to allege the happening of the contingency on which the trust was to take effect.

It follows that the demurrer was properly sustained

Judgment affirmed.