JOHN D. HAGER v. GROVER WHITENER, Administrator of the Estate of JAS. L. HAGER.

(Filed 14 June, 1933.)

**1. Wills B b—Evidence held sufficient to show a contract to devise.**

Evidence tending to show that deceased was a bachelor and an old man and induced plaintiff to sell his lands and buy other lands as tenant in common with deceased, that plaintiff moved his family to the lands thus bought and lived with deceased as a member of the family, worked the lands and supported and took care of deceased in his old age, with

testimony of declarations by the deceased tending to show that deceased had agreed to devise and bequeath plaintiff all his property in consideration of plaintiff's performance of his agreement, *is held* to show a definite contract by deceased to devise his property to plaintiff, and upon the death of the deceased intestate, is sufficient to be submitted to the jury in plaintiff's action against deceased's administrator for breach of the contract.

**2. Evidence H c—Testimony by parties not interested in event as to declarations of deceased against interest held competent.**

In an action against the administrator of a deceased person to recover for breach of the deceased's contract to devise, testimony of witnesses not interested in the event as to declarations made by the deceased against his interest was properly admitted, and testimony of defendant's witnesses as to declarations of the deceased not made in the presence of plaintiff and not against the deceased's interest was properly excluded as hearsay. C. S., 1795.

**3. Frauds, Statute of, B a—Statute of frauds is not applicable to action to recover for breach of contract to devise.**

In this action for breach of a contract to devise there was evidence tending to show that defendant's intestate induced plaintiff to support and take care of him for the remainder of his life under a contract to devise his lands to plaintiff, and that plaintiff fully performed his contract: *Held*, the defendant will not be allowed to set up the statute of frauds as a bar to the action, the plaintiff having rendered services in reliance on the intestate's promise and it being inequitable to permit defendant to take advantage of the bad faith of his intestate.

**4. Wills B c—Measure of damages for breach of contract to convey.**

In an action against the administrator of a deceased for breach of the intestate's contract to devise and bequeath all of his property to plaintiff, the measure of damages is the fair market value of the intestate's property at the time of his death.

APPEAL by defendant from *Cowper, Special Judge,* and a jury, 17 December, 1932. From MECKLENBURG. No error.

The plaintiff's complaint, in part, is as follows:

"That James L. Hager, of late a citizen and resident of Mecklenburg County, North Carolina, died intestate on or about 23 August, 1930. That Grover Whitener has duly qualified and is now acting as administrator of the estate of said James L. Hager.

That prior to 23 December, 1928, the plaintiff lived with his wife and children on a farm, in Lemley Township, Mecklenburg County, North Carolina, which was then the property of the plaintiff.

That prior to said date, said James L. Hager lived at his own residence which was then located in or near the town of Cornelius, North Carolina.

That on or about 20 December, 1928, said James L. Hager urged and solicited the plaintiff to dispose of his property and to assist said James L. Hager in purchasing another tract of land near Cornelius,

N. C., as tenant in common with said James L. Hager, and to move with his family into a certain house on said other tract of land and to live there with said James L. Hager during the life of said James L. Hager, said James L. Hager offering and proposing to compensate plaintiff therefor by canceling a certain note for $800.00, which had previously been executed by plaintiff to said James L. Hager, and by executing and leaving a will devising all of the property of said James L. Hager to plaintiff.

That in consequence of said solicitation upon the part of said James L. Hager, plaintiff accepted the proposal of said James L. Hager and, thereupon, plaintiff and said James L. Hager entered into a contract containing the following provisions: (a) That plaintiff should immediately sell and dispose of his own farm, in Lemley Township, Mecklenburg County, North Carolina, consisting of approximately 66½ acres, with valuable building thereon; (b) that the plaintiff and said James L. Hager should purchase, as tenants in common, another tract of land in or near Cornelius, N. C., containing about 25 acres, the plaintiff to pay one-half of the purchase price therefor; (c) that plaintiff and his wife and children and said James L. Hager should move into a certain house located on said 25-acre tract; (d) that said James L. Hager should live with plaintiff and plaintiff's family for the rest of his life; that plaintiff should cultivate said 25-acre tract of land and certain other farm lands owned by said James L. Hager; and that plaintiff should help take care of said James L. Hager during the life of said James L. Hager. (e) That said James L. Hager should cancel a certain note, for $800.00 which had previously been executed by plaintiff to said James L. Hager. (f) That said James L. Hager should and would give, bequeath and devise to the plaintiff, by will, all property owned by said James L. Hager."

The plaintiff further alleges, setting forth same in detail, that he complied in all respects with his part of the contract, and that the "said James L. Hager failed to execute any will and died intestate," thus breaching his contract. "Wherefore the plaintiff prays: (1) That the defendant be ordered and required to cancel said $800.00 note, and surrender same to the plaintiff; and, (2) that the plaintiff have and recover of the defendant the sum of $12,800 damages for the breach of said contract, and the costs of the action."

The defendant denied the material allegations of the complaint and set up counterclaim, and pleaded the statute of frauds, C. S., 987, 988.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Did the plaintiff, John D. Hager and Jas. L. Hager, during the lifetime of the said Jas. L. Hager, enter into a contract as alleged in the complaint? Answer: Yes.

2. If so, did the plaintiff, John D. Hager, on his part, comply with all of his obligations under said contract? Answer: Yes.

3. Did the said James L. Hager breach said contract as alleged in the complaint? Answer: Yes.

4. What amount, if any, is plaintiff entitled to recover? Answer: $8,500 (eight thousand and five hundred dollars)."

The court below rendered judgment on the verdict. There were certain stipulations between the parties in reference to the $800.00 note, and the judgment conformed to same. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Guy T. Carswell and Joe W. Ervin for plaintiff.*

*Kemp Battle Nixon, H. A. Jonas, Hiram Whiteacre, J. Laurence Jones and Geo. W. Wilson for defendant.*

CLARKSON, J. We think that plaintiff's evidence was sufficient to sustain the allegations in the pleadings. Defendant's intestate, James L. Hager, was a bachelor and an old man when he died. The testimony of J. B. Readling was to the effect that the relationship between plaintiff, Jas. L. Hager and John D. Hager "Was like unto parent and child." F. C. Sherrill testified, in part as to statements made by Jas. L. Hager in reference to John D. Hager: "He has agreed to live with me and take care of me and I am to give him what property I have got." Bob Alley testified, in part: "I am getting old and feeble and not able to work. I am going to give him what I have out there to keep me." Joe Graham testified, in part: "That they went in halves on the Washam place and that he wanted Johnsie to live with him   .   .   .   said that he was going to give him the property that he had left to take care of him and wait on him." Anne Bell Hager testified, in part: "We were discussing a neighbor who died and left his property without a will. We were discussing that on the porch with one of the neighbor boys, and after Uncle Jim and I went back in the house Uncle Jim made the remark: 'What a pity this man didn't leave a will'; that that was one thing that he intended to do, and that he intended to will it to Johnnie, because he had agreed to, because Johnnie had helped take care of him and would take care of him the rest of his life.   .   .   . He was just one of the family and very near and dear to all of us."

There was other evidence to like effect and corroborative. We think there is sufficient definite and certain evidence to show a contract.

At the close of plaintiff's evidence and at the close of all the evidence, the defendant made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no

error. The plaintiff relied on the contract as set forth in his complaint, and the evidence was sufficient to sustain the contract, and the jury so found.

In *Miller v. Lash,* 85 N. C., at p. 54, the principle is thus stated: "The authorities cited in the argument for the plaintiff seem to establish the proposition that where personal services are performed by one person for another during life under a contract or mutual understanding, fairly to be inferred from their conduct and declarations and the attending circumstances, that compensation therefor is to be provided in the will of the party receiving the benefit of them, and the latter dies intestate or fails to make such provision, the subsisting contract is then broken, and not only will the action then lie for the recovery of their reasonable value freed from the operation of the statute, but it could not be maintained before. It is equally plain that if the services were given in the mere expectation of a legacy, without a contract express or implied, and in reliance upon the gratitude and generosity of the deceased, the action cannot be sustained."

In *Brown v. Williams,* 196 N. C., 247, at p. 250, we said: "There is nothing to indicate, in the expressions made by defendant's testator, any certain or definite promise or contract, either express or implied, to make a testamentary provision in his will in favor of plaintiff. The expressions were not even made to plaintiff, but to others. It was an appreciation and intention, but not an obligation."

In the present case, the evidence was sufficient, both direct and circumstantial, to indicate that it was an obligation and a contract. Plaintiff relied on the express and implied agreement and acted under it, which defendant's intestate breached, to his damage. The plaintiff, under the statute, C. S., 1795, could not, and did not, testify.

In *Insurance Co. v. R. R.,* 195 N. C., 693, at p. 695-6, we find: "One of the leading cases in this State, discussing declarations against interest, is *Smith v. Moore,* 142 N. C., 277. In that case *Walker, J.,* writing for the Court, said: 'Declarations of a person, whether verbal or written, as to facts relevant to the matter of inquiry, are admissible in evidence, even as between third parties, where it appears: (1) That the declarant is dead. (2) That the declaration was against his pecuniary or proprietary interest. (3) That he had competent knowledge of the fact declared. (4) That he had no probable motive to falsify the fact declared.' *Roe v. Journegan,* 175 N. C., 261; *Carr v. Bizzell,* 192 N. C., 212."

We think the evidence of the witnesses above mentioned, and as to what they testified, competent. The testimony of certain witnesses as to declarations of defendants' intestate not made in the presence or hearing of plaintiff, were hearsay and incompetent, and were properly ex-

cluded by the court below. *Chandler v. Marshall,* 189 N. C., 301; *Carpenter v. Power Co.,* 191 N. C., 130. The statute of frauds set up by defendant is not applicable to the facts in this case.

In *Redmon v. Roberts,* 198 N. C., 161, at p. 164-5, speaking to the subject, it is written: "This Court and the courts generally have upheld and enforced oral contracts to devise or convey land in consideration of services rendered . . . (citing authorities). The theory upon which the reason is based, is that the party breaching the contract has received the benefit thereof, and that it would be an act of bad faith to plead the statute of frauds as a bar to recovery. This principle was declared in *Deal v. Wilson, supra* (178 N. C., 600), as follows: 'We there said that where the defendant has promised, in consideration of services to be rendered, that he will transfer to the plaintiff certain property, which he afterwards refuses to do, and, instead of fulfilling his contract, sets up the statute of frauds as a bar to any recovery on the same, he acts in bad faith, and his conduct having deceived the plaintiff, who, relying upon the assurance that the contract would faithfully be performed, had been induced to part with his money or to render services of value to the defendant, the latter may recover compensation for the loss he has sustained.' "

We think the charge on the measure of damages, as follows, correct: "The measure of damages, for breach of contract like this to devise, is the value of the property agreed to be devised and this would be as of the date of the death of James L. Hager, in this case. . . . Now, gentlemen of the jury, when the law lays down as measure of damages, in such a case, the value of the property agreed to be devised, as of the date of the death of James L. Hager—by the word 'value' the law means what is called the 'market value' or the fair, open market value of the date of the death of deceased—James L. Hager—in this case, and the fair, open, market value of any piece of property is what it will bring upon the open market for cash paid to one who is not required to sell, or there is no particular reason when he desires or feels he should sell that particular piece of property, and purchased by one who is willing to purchase, but has no particular reason why it is necessary for him to have that particular piece of property."

"The measure of damages for the breach of contract to devise is the value of the property agreed to be devised." *Bowling v. Bowling, Admr.,* 300 S. W., 876 (Ky.) ; *Redmon v. Roberts, supra.* The amount under conflicting evidence in this case was for the jury to determine.

The plaintiff did not rely on *quantum meruit,* but his contract with defendant's intestate. There was sufficient competent evidence as to the contract and the jury found under proper instructions there was a contract. The exceptions and assignments of error by defendant as to

admissions and exclusion of evidence cannot be sustained. The court below placed the burden of proof properly. What was a contract was defined in conformity with well-settled law of this jurisdiction. The contentions of the parties and the charge was fair and just to the litigants. It appears that the material contentions of defendant have been heretofore passed upon by this Court. We can see no prejudicial or reversible error.

No error.